IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FILED
JUN - 9 2011
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

PEOPLE'S UNITED EQUIPMENT )
FINANCE CORP., )
 )
        Plaintiff, )
 ) Civil Action No. 1:11cv0249 (LMB/JFA)
v. )
 )
ISHMAEL WRIGHT, et al., )
 )
        Defendants. )
 )

## PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS

This matter is before the court on plaintiff's Motion for Default Judgment Against Defendants Ishmael Wright and Mavis Wright. (Docket no. 10) ("Motion for Default Judgment"). Pursuant to 28 U.S.C. § 636(b)(1)(C), the undersigned magistrate judge is filing with the court his Proposed Findings of Fact and Recommendations, a copy of which will be provided to all interested parties.

### Procedural Background

Plaintiff People's United Equipment Finance Corp. ("plaintiff" or "People's United") filed the Complaint in this action on March 11, 2011. (Docket no. 1) ("Compl."). The Complaint stated a cause of action for breach of contract against each of two defendants, Ishmael Wright ("Mr. Wright") and Mavis Wright ("Ms. Wright"). Plaintiff sought a default judgment against both defendants, however, the undersigned denied plaintiff's Motion for Default Judgment as to Ms. Wright. The following findings of fact and recommendations will relate only to Mr. Wright.

Upon the filing of the Complaint a summons was issued as to Mr. Wright (Docket no. 2), and on March 23, 2011 an affidavit of service was filed with the court (Docket no. 3). Mr. Wright was served personally with the summons and Complaint on March 17, 2011 at 4:15 p.m. at 1603 Thomas Road, Fort Washington, Maryland, 20744.[1] (Docket no. 3). In accordance with Federal Rule of Civil Procedure 12(a), Mr. Wright's responsive pleading was due on April 7, 2011; 21 days after being served with the summons and Complaint. Mr. Wright failed to file a responsive pleading in a timely manner.

On April 20, 2011, the District Judge entered an order directing plaintiff to obtain a default and then to file a motion for default judgment. (Docket no. 7). On April 21, 2011, plaintiff filed a request for entry of default (Docket no. 8) and the next day the Clerk of the Court entered a default against both Ishmael and Mavis Wright pursuant to Federal Rule of Civil Procedure 55(a) (Docket no. 9). On April 22, 2011, plaintiff filed the Motion for Default Judgment and set a hearing for Friday, May 20, 2011 at 10:00 a.m. (Docket nos. 10, 11). The Motion for Default Judgment was supported by an affidavit of Joseph Cannici. (Docket no. 10-1) ("First Cannici Affid."). Plaintiff sent notice of the Motion for Default Judgment and hearing to the same address where defendant Ishmael Wright accepted service of the summons and Complaint. (Docket no. 11).

After plaintiff's Motion for Default Judgment was filed and served, Ms. Wright made her first appearance in this matter. On May 11, 2011, Ms. Wright filed an objection stating that she had no knowledge of this suit until she received the Motion for Default Judgment in the mail on April 23, 2011 and stating her intention to contest plaintiff's claims against her. (Docket no. 13). Later that day, Ms. Wright filed an Answer to plaintiff's Complaint stating a cross-claim against

---

[1] The affidavit of service bears what appears to be the signature of Ishmael Wright indicating acceptance of personal service. (Docket no. 3).

Mr. Wright and a counter-claim against plaintiff. (Docket no. 14). Ms. Wright also filed an Affidavit Denying Genuineness of Signature. (Docket no. 15). On May 16, 2011, plaintiff filed a memorandum in support of the Motion for Default Judgment as to Ms. Wright. (Docket no. 16). On May 19, 2011, Ms. Wright filed a Motion to Set Aside Entry of Default and Default Judgment. (Docket no. 17) ("Motion to Set Aside Default").

On May 20, 2011, counsel for the plaintiff, counsel for Ms. Wright, and Ms. Wright appeared before the undersigned for a hearing in this matter. (Docket no. 18). No one appeared on behalf of Mr. Wright. On the same day, the undersigned issued an order denying the Motion for Default Judgment as to Ms. Wright and granting Ms. Wright's Motion to Set Aside Default. (Docket no. 19). The undersigned also issued an order on the Motion for Default Judgment as to Mr. Wright, stating that a report and recommendation would be prepared and requiring plaintiff to file a supplemental memorandum on damages by May 27, 2011. (Docket no. 20).

On May 27, 2011, plaintiff filed the supplemental memorandum on damages (Docket no. 22) ("Supp. Memo.") supported by affidavits of Alison Feehan (Docket no. 22-1) ("Feehan Affid.") and Joe Cannici (Docket no. 22-2). On June 8, 2011, plaintiff filed a revised affidavit of Mr. Cannici. (Docket no. 25) ("Second Cannici Affid.").

### Proposed Findings and Recommendations

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). As defendant Ishmael Wright has failed to file an Answer or otherwise appear in this case, the entry of a default judgment is appropriate. However, as defendant Mavis Wright has appeared to contest the claims against her in this case,

the court must first determine whether it is appropriate to enter a default judgment against one but not all of the defendants.

In 1872 the Supreme Court was presented with a case in which the entry of a default judgment finding that certain non-appearing defendants committed fraud was followed by a finding at trial that no fraud had occurred; the Court declared the result to be "unseemly and absurd." *Frow v. De La Vega*, 82 U.S. 552, 554 (1872). The *Frow* Court ruled that when a complaint brings a cause of action jointly against several defendants and one of the defendants defaults, the court should "simply enter a default and a formal decree *pro confesso* against him, and proceed with the cause upon the answers of the other defendants." *Frow*, 82 U.S. at 554 ("[A] final decree on the merits against the defaulting defendant alone, pending the continuance of the cause, would be incongruous and illegal.").

Federal Rule of Civil Procedure 54(b) was later enacted, stating that when an action presents a claim against multiple parties the court may direct entry of a final judgment against fewer than all of the defendants "only if the court expressly determines that there is no just reason for delay."[2] Fed. R. Civ. P. 54(b). Most courts have narrowly construed *Frow* to prohibit entry of a default judgment against one defendant only when the theory of recovery is true joint liability, meaning only when "as a matter of law, no one defendant may be liable unless all defendants are liable." *See Phoenix Renovation Corp. v. Gulf Coast Software, Inc.*, 197 F.R.D. 580, 582-83 (E.D. Va. 2000). However, the Fourth Circuit has taken a broader view, holding that the *Frow* procedure and Rule 54(b) are "strikingly similar" and thus applying *Frow* "not

---

[2] The full text of Rule 54(b) reads: "When an action presents more than one claim for relief--whether as a claim, counterclaim, crossclaim, or third-party claim--or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).

only to situations of joint liability but [also] to those where the liability is joint and/or several." *U.S. for the use of Hudson v. Peerless Insurance Company*, 374 F.2d 942, 944 (4th Cir. 1967).

This court has found it appropriate to hold in abeyance the entry of a final default judgment against a defaulting defendant pending resolution of the case against an active defendant, though the court precluded the defaulting defendant from contesting the findings of fact or conclusions of law set forth by the magistrate judge. *Phoenix Renovation Corp.*, 197 F.R.D. at 584, *see also Vick v. Wong*, 263 F.R.D. 325, 333 (E.D. Va. 2009) (staying entry of default judgment). Another court in this Circuit has found "just reason" to delay the entry of a default judgment when the plaintiff had not distinguished between the defendants regarding their liability for alleged violations of plaintiff's constitutional rights. *McDaniels v. South Carolina Dept. of Corrections*, 2010 WL 3782134, *3 (D. S.C. 2010), *see also Joe Hand Promotions, Inc. v. Sheedy*, 2010 WL 3724754, *3 (D. S.C. 2010).

In this case, there is no just reason for delay in entering a default judgment against Mr. Wright. The Guaranty signed by Mr. Wright states that "Guarantor (whether one or more) agrees to be directly and unconditionally liable to [plaintiff]...for the due payment and performance of all Obligations." (Docket no. 1-2). This is a case of true joint and several liability, where "each liable party is individually responsible for the entire obligation, but a paying party may have a right of contribution and indemnity from nonpaying parties." Black's Law Dictionary (9th ed. 2009), *see also The Corner Associates v. W.R. Grace & Company-Conn.*, 173 F.3d 424 (Table), 1999 WL 95511, *4 (4th Cir. 1999).

The import of *Frow* and *Peerless* is that a default judgment should not be granted against a defaulting defendant when a finding as to an appearing defendant could result in an inconsistent judgment. *See Jefferson v. Briner, Inc.*, 461 F.Supp.2d 430, 438 (E.D. Va. 2006).

As stated in her Answer, and as stated in a hearing before the undersigned, Ms. Wright's defense to plaintiff's allegations is that her signature on the Guaranty was forged and thus she does not owe plaintiff any part of the sums demanded. (Docket no. 14). Because the result in this case against each different will not be logically inconsistent, there is no just reason for delay in entering a judgment against Mr. Wright in the full amount of the debt. If Ms. Wright prevails on her theories of fraud and forgery, a default judgment finding Mr. Wright to be liable for the debt would not be affected. And if plaintiff prevails against Ms. Wright, there is no inconsistency in the court finding that each defendant is liable to plaintiff for the full amount of the debt.

A defendant in default admits the factual allegations in the Complaint. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation - other than one relating to the amount of damages - is admitted if a responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F.Supp.2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the Complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). Mr. Wright has defaulted and thus admitted the allegations against him. Rule 55(b)(2) provides that a court may conduct a hearing to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter. The court must have both subject matter and personal jurisdiction over a defaulting party before it can render a default judgment.

## Jurisdiction and Venue

Plaintiff alleges that this matter is properly brought in this court under 28 U.S.C. § 1332(a)(1) based on complete diversity of citizenship and an appropriate amount in controversy. (Compl. ¶ 5). Plaintiff is a Texas corporation that is authorized to conduct business in Virginia. (Compl. ¶ 1). Plaintiff alleges that each of the defendants is a citizen of Maryland. (Compl. ¶¶

2, 3). Plaintiff's Complaint seeks a judgment of $910,714.91, significantly more than $75,000. (Compl. at 3).

Plaintiff alleges that the exercise of personal jurisdiction by this court over Mr. Wright is proper under the Virginia long-arm statute, Va. Code § 8.01-328.1, because he transacted business in the Commonwealth of Virginia. (Compl. ¶ 4). Plaintiff alleges that the New Vision Disposal and Recycling Services, Inc. ("New Vision") is a disposal company operating out of Northern Virginia; the Promissory Note bears the signature of Mr. Wright on behalf of New Vision. (Compl. ¶ 7, Docket no. 1-1 at 2). Plaintiff alleges that venue is appropriate in this court under 28 U.S.C. § 1391(a)(1). (Compl. ¶ 6).

The undersigned magistrate judge recommends a finding that this court has subject matter jurisdiction over this action, that the court has personal jurisdiction over Mr. Wright and that venue is proper in this court.

## Grounds for Entry of Default

After the filing of plaintiff's Complaint, a summons was issued. (Docket no. 2). Mr. Wright was served personally with the summons and Complaint on March 17, 2011 at 4:15 p.m. at 1603 Thomas Road, Fort Washington, Maryland, 20744. (Docket no. 3). The address where Mr. Wright was served is the address listed in the Complaint as the residence of both Ishmael and Mavis Wright (Compl. ¶¶ 2, 3) and was admitted to be the residence of both defendants in Ms. Wright's Answer (Docket no. 14). In accordance with Federal Rule of Civil Procedure 12(a) an answer was required within 21 days after service of the summons and Complaint; Mr. Wright's responsive pleading was due on April 7, 2011. Mr. Wright failed to file a responsive pleading in a timely manner. Plaintiff requested entry of default on April 21, 2011 (Docket no. 8) and the Clerk entered a default against Mr. Wright on April 22, 2011 (Docket no. 9).

For these reasons, the undersigned magistrate judge recommends a finding that Mr. Wright was served properly, that he failed to file a responsive pleading in a timely manner and that the Clerk properly entered a default as to Mr. Wright.

## Liability

Rule 54(c) of the Federal Rules of Civil Procedure provides that a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Because Mr. Wright did not file a responsive pleading and is in default, he admits the factual allegations in the Complaint. *See* Fed. R. Civ. P. 8(b)(6).

The following facts are established by the Complaint. (Docket no. 1). New Vision entered into a Promissory Note with plaintiff on July 29, 2010.[3] (Compl. ¶¶ 7, 8, *see also* Docket no. 1-1). Under the Promissory Note, New Vision is liable to plaintiff in the amount of $843,214.91. (Compl. ¶ 8). Mr. Wright guaranteed repayment of all of New Vision's obligations under the Note by a Guaranty signed on January 24, 2006.[4] (Compl. ¶ 9, *see also* Docket no. 1-2). Material defaults have occurred, plaintiff has accelerated the amounts due and demanded payment, and Mr. Wright has failed to pay the sums demanded. (Compl. ¶¶ 10, 11).

The Guaranty signed by Mr. Wright states that it "and all documents executed in connection herewith shall be construed in accordance with and governed by the laws of the state of guarantor's location as set forth in this agreement;" Mr. Wright's address is listed in the Guaranty as 1603 Thomas Road, Fort Washington, Maryland, 20744. (Docket no. 1-2). Under Maryland law, the elements of a breach of contract claim are 1) a contractual obligation and 2) a

---

[3] The parties to the Promissory Note are New Vision Disposal & Recycling Services, Inc. and Financial Federal Credit Inc. (Docket no. 1-1). The Complaint states that plaintiff was formerly known as Financial Federal Credit Inc. (Compl. at 1).

[4] The Guaranty states that the obligations covered by the Guaranty includes "any and all existing and future indebtedness and/or obligations of [New Vision]". (Docket no. 1-2 at 1).

8

material breach of that obligation. *Taylor v. NationsBank, N.A.*, 365 Md. 166, 776 A.2d 645, 651 (2001).

Given that the factual allegations alleged in the Complaint are deemed admitted, the undersigned recommends a finding that plaintiffs have established a claim for breach of contract against Mr. Wright.

## Measure of Damages

Plaintiff's Complaint sought a judgment on the breach of contract claim against Mr. Wright (Count I) in the amount of $910,714.91, as of March 2, 2011, plus attorneys' fees, costs, expenses and interest. (Compl. at 3). Plaintiff's Motion for Default Judgment, supported by the first affidavit of Mr. Cannici, sought a judgment against Mr. Wright in the amount of $810,714.91, plus interest from March 2, 2011 through payment, and attorney's fees of $10,529.54. (Docket no. 10, First Cannici Affid. ¶¶ 1-4).

Given the discrepancy between the amounts sought in the Complaint and in the Motion for Default Judgment, the undersigned ordered plaintiff to provide additional information concerning the amount owed by Mr. Wright pursuant to the Promissory Note and Guaranty. (Docket no. 20). Plaintiff's supplemental memorandum states that the total amount sought on the Promissory Note and the Guaranty is "$882,319.71, plus interest accruing from and including May 27, 2011 through the date of judgment at the contract rate of 12.5% per [annum][5] until paid" and "$14,966.28 [for] attorney's fees and expenses." (Supp. Memo. at 1-2).

Plaintiff provided as further support for its damages request a second affidavit of Mr. Cannici, a Vice President of People's United. (Second Cannici Affid. ¶ 1). Mr. Cannici states that the total amount of the loan to New Vision was $843,219.91 and that payments totaling

---

[5] Plaintiff's supplemental memorandum sought interest at the rate of "12.5% per day," however the revised affidavit of Mr. Cannici indicates that the post-judgment interest sought is 12.5% per annum. (See Second Cannici Affid.).

$35,355.00 have been made on the loan to date. (Second Cannici Affid. ¶¶ 1, 3). Mr. Cannici states that as of May 27, 2011, "$882,319.71 is due and owing on the loan, comprised of $807,859.91 in unpaid [installment payments][6], $65,209.80 in accrued interest, and $9,150.00 in late fees." (Second Cannici Affid. ¶ 4). Mr. Cannici further states that interest continues to accrue on the unpaid principal balance "at the rate of 12.5% per annum." (Second Cannici Affid. ¶ 5).

The Promissory Note states a total loan amount of $843,214.91 and states that the total loan amount "includes pre-computed interest (at the "non-default interest rate")." (Docket no. 1-1). The amortization schedule included in the revised affidavit of Mr. Cannici shows that the installment payments which comprise the $843,214.91 total loan amount include interest of 12.5% on the principal balance. (Second Cannici Affid.). Plaintiff's counsel informs the undersigned that payment was received in full on each of the first and the second installment payments under the Promissory Note, but that the payment received on October 1, 2010 was a partial payment and that no payments have been received since that date. The additional accrued interest and late charges stated in the revised affidavit of Mr. Cannici are additional amounts in excess of the total loan amount (including the pre-computed interest) that have accrued since the October 1, 2010 partial payment.[7] The undersigned finds that plaintiff is entitled to recover a total of $882,319.71 including $807,859.91 in unpaid installment payments due (including pre-computed interest), plus $65,309.80 in additional interest from October 1, 2010 through May 27, 2011, and late fees of $9,150.00.

---

[6] The revised affidavit of Mr. Cannici states that People's United is entitled to "$807,859.91 in unpaid principal," however, this amount represents the amount of payments made subtracted from the total amount of the loan which included both principal and pre-computed interest. It is more accurate to say that People's United is owed $807,859.91 in unpaid installment payments.

[7] The Promissory Note provides for interest to accrue "after maturity of the entire indebtedness (whether by acceleration or otherwise)…at the maximum lawful daily rate, but not to exceed 0.0666% per day, until paid in full." (Docket no. 1-1 at 1). The Promissory Note also provides for a late charge of a percentage of the overdue installment "not to exceed five percent (5%)." *Id.*

The affidavit of Mr. Cannici also states that interest on the unpaid principal continues to accrue at the rate of 12.5%. The Promissory Note provides that "after maturity of the entire indebtedness (whether by acceleration or otherwise), [New Vision] shall pay, on demand, interest on the unpaid indebtedness (excluding unpaid interest and late charges) at the maximum lawful daily rate, but not to exceed .0666% per day." (Docket no. 1-1 at 1). Pursuant to the Promissory Note, calculating the .0666% daily rate on a 360-day year, plaintiff is entitled to seek an interest rate of up to 23.976% per year. Under Maryland law, the loan at issue in this matter is a "commercial loan" because it is made to a business and solely for the purpose of carrying on that business.[8] Md. Com. L. Code § 12-101(c). There is no maximum rate of interest for a commercial loan in Maryland. Md. Com. L. Code § 12-103(e), *see also James Blakeney Sutherland, Trust v. Maryland National Bank*, 1991 WL 111371, *2 (D. Md. 1991). The undersigned finds that the 12.5% per year post-judgment interest rate which plaintiff seeks is permitted under Maryland law and under to the Promissory Note.

Plaintiff also provided the affidavit of Alison Feehan, counsel for plaintiff detailing the attorney's fees and costs incurred in this action.[9] Ms. Feehan states that plaintiff has been billed $6,507.50 in attorney's fees and $800.04 in expenses through March 31, 2011, and has incurred an additional $7,377.62 in attorney's fees and $311.12 in costs from April 1, 2011 through May 23, 2011. (Feehan Affid. ¶¶ 4, 5). The total sought for attorney's fees is $13,885.12 and the total sought for expenses is $1,111.16.

---

[8] The Promissory Note states that the proceeds of the loan "are to be used for business purposes only." (Docket no. 1-1 at 2).

[9] The Promissory Note states that the "[New Vision], all endorsers, guarantors and any other party liable on this Note also promise and agree to pay [plaintiff's] costs, expenses and reasonable attorneys' fees incurred in enforcing and/or collecting this Note." (Docket no. 1-1). And in the Guaranty, Mr. Wright "covenant[ed] and agree[d]…to pay [plaintiff's] reasonable attorney's fees incurred in enforcing either this Guaranty of any Obligations." (Docket no. 1-2).

The affidavit of Ms. Feehan does not state the title, position, or level of experience of the individuals whose time has been billed on this matter, however, Ms. Feehan, Loc Pfeiffer, and Jeremy Williams appear listed as attorneys on the website of plaintiff's counsel's law firm. The affidavit of Ms. Feehan states a total of 50.8 hours of attorneys' time billed at hourly rates of $285 for Ms. Feehan, $270 for Mr. Pfeiffer, and $200 for Mr. Williams, and 9.6 hours of non-attorney time billed at hourly rates between $75 and $140. (Feehan Affid. ¶ 9). The total sought for expenses includes $500.00 for filing fee and service of process, $255.21 for freight and postage, $153.60 for reproduction costs, $114.75 for travel expenses, and $87.60 for UCC searches and reports. *Id.*

The undersigned magistrate judge has reviewed the affidavit of Ms. Feehan and recommends a finding that the hourly rates charged for the attorneys and the non-attorneys are reasonable.[10] However, a review of the time entries submitted by the plaintiff reveals a number of concerns. First, the numbers of hours stated for each individual in Ms. Feehan's affidavit are not supported by the invoices and timesheets filed. By the undersigned's calculation, the number of hours worked by individual should read:

a. Sarah Abrams: 4.1 hours
b. Jennifer Dodge: 1.7 hours
c. Alison Feehan: 25.5 hours
d. Charisse Matthews: 1.9 hours
e. Loc Pfeiffer: 17.9 hours

---

[10] The Feehan affidavit does not comply fully with the standards set forth in *Grissom v. The Mills Corp.*, 549 F.3d 313, 320-23 (4th Cir. 2008), *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 (4th Cir. 1978), and *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) for establishing a reasonable hourly rate. Other than a statement that the "rates are reasonable given the prevailing market rates for this type of practice in federal court in Virginia," the affidavit of Ms. Feehan does not provide any supporting information proving that the fees charged are comparable with the prevailing market rates of other local lawyers familiar both with the skills of the fee applicants and the type of work in the relevant community, Northern Virginia in this case. *Plyler*, 902 F.2d at 278. However, since the defendant has not contested the hourly rates in this case, the undersigned will accept the allegations set forth by plaintiff concerning the reasonableness of those rates as true. The hourly rates requested are consistent with the rates and costs incurred in similar cases and awarded by this court.

f. Kimberleigh Swift: 0 hours
   g. Jeremy Williams: 1.9 hours

Second, it appears that a portion of the time for which plaintiff seeks to recover was spent on another matter previously pending before the U.S. Bankruptcy Court in this District. And third, it is not appropriate in the context of a default judgment against Mr. Wright to recover for time spent specifically responding to the pleadings filed by Ms. Wright. Accordingly, the number of hours spent on this matter should be reduced by the following amounts: Ms. Abrams' hours should be reduced by 4.1 hours (the entire amount sought),[11] Ms. Dodge' hours should be reduced by .4 hours,[12] Ms. Feehan's hours should be reduced by 3.4 hours,[13] and Mr. Pfeiffer's hours should be reduced by 14 hours.[14] Combined with the undisturbed amounts for Ms. Matthews and Mr. Williams, the resulting total of attorney's fees to be awarded is $8,160.00, comprised of:

   a. Sarah Abrams: no fees
   b. Jennifer Dodge: 1.3 hours at $125.00 per hour = $162.50
   c. Alison Feehan: 22.1 hours at $285.00 per hour = $6,298.50
   d. Charisse Matthews: 1.9 hours at $140.00 per hour = $266.00
   e. Loc Pfeiffer: 3.9 hours at $270.00 per hour = $1,053.00
   f. Kimberleigh Swift: no fees
   g. Jeremy Williams: 1.9 hours at $200.00 per hour = $380.00

---

[11] Striking the March 2, 2011 entry for 3.8 hours and the March 23, 2011 entry for .3 hours for work on the bankruptcy case. (Docket no. 22-1 at 6, 7).

[12] Striking the February 28, 2011 entry for .4 hours for work on the bankruptcy case. (Docket no. 22-1 at 4).

[13] Striking the May 31, 2011 entries for 1 hour and 2.4 hours for work responding to pleadings filed by Ms. Wright. (Docket no. 22-1 at 12).

[14] Reducing the February 28, 2011 entry for 5.2 hours to 1.2 hours to include only the entry for drafting the Complaint filed in this case, and striking the March 2, 2011 entry for 2.4 hours, the March 23, 2011 entries for 1.5 hours and 5.5 hours, the March 29, 2011 entry for .4 hours, and the March 30, 2011 entry for .2 hours, all for work on the bankruptcy case. (Docket no. 22-1 at 4, 6, 7, 8).

The affidavit of Ms. Feehan states that plaintiff seeks a total of $1,111.16 in expenses. (Feehan Affid. ¶¶ 4-5). A review shows that the amount of expenses sought includes a number of unsupported entries. The $114.75 charge for travel expenses and a $14.29 charge for freight and postage should be struck because plaintiff has provided no evidence supporting when the travel, freight, and postage expenses were incurred and for what necessary purpose. (Docket no. 22-1 at 9). The $500.00 charge for filing fees should be reduced to $350.00, the filing fee for a civil case in this court.[15] *Id.* And the charge for $235.00 for outside courier services should be reduced by half to $117.50 to exclude the costs of service of process on Ms. Wright. (Docket no. 22-1 at 13). The proper amount of expenses to be awarded is $714.62 (comprised of $350.00 for the filing fee, $117.50 for service of process, a total of $87.60 for UCC searches, and a total of $159.52 for reproduction costs and scans).

## Conclusion

For these reasons the undersigned recommends that a default judgment be entered in favor of People's United Equipment Finance Corporation and against Ishmael Wright on plaintiff's claim for breach of contract in the amount shown below, with interest accruing at the rate of 12.5% from the date of judgment until paid.

| | |
|---|---|
| Unpaid Installment Payments | $807,859.91 |
| Additional Interest accrued through May 27, 2011 | $65,309.80 |
| Late Fees | $9,150.00 |
| Attorney's Fees | $8,160.00 |
| Expenses | $714.62 |
| *Total* | *$891,194.33* |

---

[15] See http://www.vaed.uscourts.gov/formsandfees/schedule.htm.

## Notice

By means of the court's electronic filing system and by mailing a copy of this Proposed Findings of Fact and Recommendations to Ishmael Wright at 1603 Thomas Road, Fort Washington, Maryland, 20744, the parties are notified that objections to this Proposed Findings of Fact and Recommendations must be filed within fourteen (14) days of service of this Proposed Findings of Fact and Recommendations and a failure to file timely Objections waives appellate review of the substance of the Proposed Findings of Fact and Recommendations and waives appellate review of any judgment or decision based on this Proposed Findings of Fact and Recommendations.

ENTERED this 9th day of June, 2011.

/s/
John F. Anderson
United States Magistrate Judge

Alexandria, Virginia

15